1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KAREN BASTING,

               Plaintiff,

     v.

SAN FRANCISCO BAY AREA RAPID
TRANSIT DISTRICT,

               Defendant.

Case No. 20-cv-05981-SI

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT**

Re: Dkt. No. 31

Before the Court is a Motion for Summary Judgment filed by defendant San Francisco Bay Area Rapid Transit District ("BART") against plaintiff Karen Basting on September 24, 2021. Dkt. No. 31. The Court reviewed the parties' briefs and held a hearing on November 19, 2021. After careful consideration of the arguments raised and the materials submitted, the Court will GRANT defendant's Motion for Summary Judgment.

**BACKGROUND**

In 2019, BART commissioned Segal Waters Consulting to conduct a study on BART's employee classification and compensation practices. Compl. ¶ 12 ("Segal Study"). Historically, BART has classified its non-represented employees into various "pay bands," wherein each pay band has a range of approximately $50,000. Dkt. No. 31-3 ¶ 4. Among other things, the Segal Study recommended that BART bump salaries to the midpoint for all employees who (i) had two or more years of service within a classification, and (ii) were below the midpoint of the salary band. *Id*. ¶ 10. To implement the recommendation in such a way as to maintain "fiscal responsibility," BART granted salary increases to the midpoint for all sub-midpoint employees who had been in

their classification for two or more years as of June 30, 2019.  Dkt. 31-3, Ex. D at 47.

Karen Basting become BART's Manager of Customer Service on January 19, 2018.  Compl. ¶ 9.  The Segal Study would later re-classify her as the Director of Customer Service within the Office of External Affairs.  Dkt. No. 31-3 ¶¶ 9, 14.  Practically speaking,[1] Basting had occupied her classification for 18 months and was below the mid-point of her salary band when BART implemented the Segal Study's recommended salary increases.  Because Basting was not in her classification for at least two years as of June 30, 2019, BART did not increase Basting's salary to the midpoint.  Dkt. No. 37 at 9 (Basting's Opposition) (collecting deposition testimony that the "only reason" Basting was not given a raise was due to not meeting the two-year cutoff).  Basting tried to negotiate for an exception to the two-year rule, to no avail.  See *id*. (detailing unsuccessful efforts to negotiate).  When Basting finally reached two years in her classification, she again attempted to negotiate an increase.  Dkt. No. 38-1 at 49, Ex. O.  Basting's request was again denied. BART informed her that it had "no intent to continue making adjustments on a rolling basis after the implementation" of the Segal Study.  *Id*.

The Office of External Affairs had three other Directors in addition to Basting: Aaron Weinstein, Director of Marketing and Research; Roddrick Lee, Director of Government Relations; and Alicia Troost, Director of Communications.  Dkt. No. 31-3 ¶ 14.  The three other Directors— two men, one woman—all received pay increases pursuant to the Segal Study because they had been in their classification for at least two years as of June 30, 2019 and were below the midpoint.  *Id*.

Basting sued BART on July 10, 2020 in state court.  The case was subsequently removed to this Court.  In Basting's view, BART's refusal to grant her a salary increase to the midpoint both before and after she had secured two years in her classification amounted to wage discrimination based on gender.  As Basting sees it, BART gave the salary increase to the two male Directors who occupied nearly identical roles but refused to give her an increase.  The complaint alleged (1) violations of the federal and state Equal Pay Acts, (2) Title VII discrimination, and (3) retaliation under state law.  Now before the Court is BART's Motion for Summary Judgement on all claims.

---

[1] Both parties seem to agree that the relevant "start date" for Basting's tenure within her classification is January 2018, rather than the date of her reclassification.

United States District Court
Northern District of California

Dkt. No. 31.   In the briefing for the motion, Basting agreed to drop the retaliation claim. Accordingly, the Court only considers whether summary judgment should issue in favor of BART on Basting's state and federal Equal Pay Act claims and the Title VII discrimination claim.

## LEGAL STANDARD

The Court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burdens of production and persuasion. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos*., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).  If the movant meets its initial burden, the opposing party must go beyond the pleadings and "by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).  Importantly, the Court cannot weigh conflicting evidence, and all justifiable inferences must be drawn in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

## DISCUSSION

I.      **Equal Pay Act Claims**

      A.      **Applicable Law**

The federal Equal Pay Act ("EPA") bars employers from paying different wages for "equal work," on the basis of sex.  29 U.S.C. § 206(d).  In a lawsuit brought under the EPA, the "plaintiff has the burden of establishing a prima facie case of discrimination by showing that employees of the opposite sex were paid different wages for equal work." *Stanley v. Univ. of S. California*, 178 F.3d 1069, 1073–74 (9th Cir. 1999).  Perfect equality is not required.  Rather, a plaintiff may demonstrate that jobs are "substantially equal." *Id.* at 1074 (the "crucial finding on the equal work issue is whether the jobs to be compared have a 'common core' of tasks, i.e. whether a significant portion of the two jobs is identical.").  To do so, the Court must consider the "specific facts involved" rather than generalizations based on job titles. *Id.*; 29 CFR § 1620.13(e).  For example, two jobs may be rendered unequal when one "plainly requires skills" the other does not. *Hein v. Oregon*

*Coll. of Educ.*, 718 F.2d 910, 914 (9th Cir. 1983) (reversing a finding that a teacher who spent 100% of her time teaching lecture classes held a job that was "substantially similar" to a teacher who spent 75% of his time lecturing and 25% of his time coaching varsity basketball).

Even if a plaintiff makes out a prima facie case of different pay for equal work, a "defendant may rebut a prima facie case by showing that the disparity in pay" is pursuant to "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Stanley*, 178 F.3d at 1075; 29 U.S.C. § 206(d)(1). These four justifications operate as "affirmative defenses to EPA claims." *Rizo v. Yovino*, 950 F.3d 1217, 1219 (9th Cir. 2020). Notably, the fourth justification, "any other factor other than sex," must still somehow relate to "job experience, job qualifications, and job performance." *Rizo*, 950 F.3d at 1224, 1226 (declining to adopt an "expansive reading of the fourth exception" because the "equal-pay-for-equal-work mandate would mean little if employers were free to justify paying an employee of one sex less than an employee of the opposite sex for reasons unrelated to their jobs.").

Once a defendant provides an acceptable justification for the pay differential, the plaintiff may nonetheless defeat summary judgment by showing "that the employer's proffered nondiscriminatory reason is a 'pretext for discrimination.'" *Stanley*, 178 F.3d at 1076. Plaintiff's burden to demonstrate a material fact regarding pretext is "minimal," *id.*, and may be met by offering some "meaningful evidence" that "undermine[s]" the defendant's assertion that its differential treatment was based on an acceptable factor. *Id*. See also *EEOC v. Maryland Ins. Admin.*, 879 F.3d 114, 121 (4th Cir. 2018) ("once the plaintiff has established a prima facie case the employer will not prevail at the summary judgment stage unless the employer proves its affirmative defense so convincingly that a rational jury could not have reached a contrary conclusion.").

### B.     Analysis

Basting's complaint alleges that BART violated the EPA when it refused to raise her salary to the midpoint range of her classification while granting raises to the male directors in the Office of External Affairs.  In response, BART insists that the director positions are not "equal."  Further,

United States District Court
Northern District of California

BART submits that it declined to raise Basting's salary because, unlike the other directors in her office (two males and one female), Basting had not occupied her classification for at least two years as of June 30, 2019.  The Court finds that even if Basting were able to show a genuine issue of disputed fact whether her position was "equal" to the other directors, summary judgment would be appropriate were BART able to prove "not simply" that the two-year rule "could explain the wage disparity," but that the two-year rule does "*in fact* explain the wage disparity." *Rizo*, 950 F.3d at 1222 (9th Cir. 2020), quoting *EEOC*, 879 F.3d at 121.  Stated differently, if Basting is unable to demonstrate a genuine dispute of material fact as to BART's proffered affirmative defense, the Court may grant the motion without resolving the "equal work" component of the EPA claim.

BART submits that the Segal Study's recommended pay bumps were applied uniformly to all non-represented employees who met the criteria, irrespective of gender.  Dkt. No. 31-3 ¶¶ 10, 14.  Further, as applied to all non-represented employees, women fared better than men under the policy.  *Id*. at 51, Ex. E (Disparate Impact Study).  As arbitrary as the two-year bright line cut off might appear to Basting, BART's uniform criteria for increasing the salaries of the other directors in Basting's office (i.e., two men and one woman) constitutes an acceptable "differential based on any other factor other than sex."  29 U.S.C. § 206(d)(1).

The "any other factor" may incorporate job-related elements such as "shift differentials, differences based on time of day worked, hours of work, lifting or moving heavy objects, and differences based on experience, training, or ability."  *Rizo*, 950 F.3d at 1226, citing H.R. Rep. No. 88-309, at 3 (1963).  Critically, the "any other factor" must relate "to the job for which an EPA plaintiff must demonstrate unequal pay for equal work." *Rizo*, 950 F.3d at 1227.  The Ninth Circuit thus held in *Rizo* that a pay differential based on a plaintiff's prior pay in "a different job" was not sufficiently job-related as to justify the differential wage.  *Id*.  Here, BART implemented the two-year cutoff per the Segal Study's observation that an employee would generally achieve "proficiency" within their job classification after two years.  Dkt. No. 38-1 at 49, Ex. O.  Unlike prior pay, BART's proficiency presumption was not exogenous to the job at issue; it relates directly to the job on which the EPA claim is predicated.  Accordingly, the factor is sufficiently job-related as to fall within the fourth exception of the EPA.  In the alternative, the Court finds that the one-

United States District Court
Northern District of California

1   time pay bumps were pursuant to a "seniority system."

2          Basting fails to dispute that BART consistently adhered to the two-year rule when justifying

3   the salary differential.  Even Basting's own opposition brief cites record evidence indicating that

4   "the *only reason* Ms. Basting was not put at midpoint was because she was not in her classification

5   for two years."  Dkt. No. 37 (Oppo) at 9 (emphasis added); *Id*. ("Mr. Hathorn also confirmed that

6   the only reason Aaron Weinstein was placed at midpoint was because he had two years in his

7   classification.).    In passing, Basting states that BART "negotiated" increases with "some

8   employees" who did not meet the cutoff, *id*. at 11, citing Dkt. No. 38-2 at 25 (Hathorne Deposition),

9   perhaps to suggest that the two-year rule was not uniformly applied.   However, the relevant

10  deposition testimony indicates that the "some employees" referred to were part of the AFSCME

11  union and were thus not the subject to Segal Study (which applied to non-represented employees).

12  Accordingly, these "some employees" do not create an issue of material fact as to whether the Segal

13  Study's two-year rule "do[es] *in fact* explain" the differential among non-represented employees.

14  *Rizo*, 950 F.3d at 1222 (9th Cir. 2020), quoting *EEOC*, 879 F.3d at 121

15         Basting also points to BART's subsequent refusal to increase her salary after she reached

16  her two-year anniversary as evidence of gender discrimination.  But this evidence cuts the other

17  way.  It demonstrates BART's uniform adherence to its decision to bump salaries only to those

18  employees who were in their classification *for two years as of June 30, 2019*.    Finally, Basting

19  argues that the Court should infer pretext from BART's "shifting reasons" for not placing her at the

20  midpoint at the salary scale.  On the one hand, she argues, BART justifies the differential based on

21  "unequal work," and on the other hand, BART states the differential is based solely on the two-year

22  policy.  But these are not shifting reasons; they are arguments directed at different levels of the

23  EPA's analytical structure.  The first point, which attempts to distinguish the skills required for the

24  positions, attacks the formation of a prima facie case.  The second point, which provides a non-

25  discriminatory justification, acts as an affirmative defense to an established prima facie case.  *See*

26  *Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1223 (9th Cir. 2021); *Hein*, 718 F.2d at 913 ("Once the

27  plaintiff has established a prima facie case, the burden shifts to the employer to prove that the

28  differential in wages is justified under one of the Equal Pay Act's four exceptions.").

1    Because BART has tendered a factually supported and gender-neutral reason for the pay

2    difference per 29 U.S.C. § 206(d)(1)(iv), and because Basting has failed to meet her "minimal

3    burden" to suggests that the two-year policy is a façade for gender discrimination, Basting's federal

4    Equal Pay Act claims fail even if she could establish a prima facie case.

5

6    **II.     California Equal Pay Act Claims**

7    Plaintiff's claims under the analogous California Equal Pay Act fail for the same reasons as

8    her federal claim.   Even if California's statute offers a more liberal conception of "equal work,"

9    (i.e., "substantially similar work"), BART's two-year policy constitutes a "bona fide" factor for the

10   pay difference that is (1) not based on sex, (2) is job-related, and (3) is consistent with a business

11   necessity.   California Labor Code 1197.5 (a)(1)(D).   As discussed above, the two-year rule applied

12   to all employees uniformly.   A female director in Basting's office who met the two-year cutoff was

13   thus given a pay bump, indicating that the factor was not based on sex.   The factor was job related,

14   as the two-year rule was used as a proxy for proficiency within a classification.   Dkt. No. 38-1 at

15   49, Ex. O.   Finally, the factor was related to business necessity.   BART decided on a one-time pay

16   bump based on the two-year cutoff in order to implement the Segal Study's recommendation in a

17   financially viable manner.   Dkt. 31-3, Ex. D at 47.   Bastings fails to offer record evidence that would

18   call into question the factual predicates of BART's "bona fide" reason.   Accordingly, BART is

19   entitled to summary judgment on the California Equal Pay Act claims.

20

21   **III.    Title VII Discrimination**

22   To meet the initial burden for a Title VII discrimination claim, a "plaintiff must offer

23   evidence that gives rise to an inference of unlawful discrimination, either through the *McDonnell*

24   *Douglas* framework or with direct evidence of discriminatory intent."   *Siring v. Oregon State Bd. of*

25   *Higher Educ. ex rel. E. Oregon Univ.*, 927 F. Supp. 2d 1030, 1053 (D. Or. 2012).   Direct evidence

26   of discriminatory intent may include "conduct or statements" by relevant decision-makers "that may

27   be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the fact finder

28

United States District Court
Northern District of California

7

1   to infer that the attitude was more likely than not a motivating factor in the employer's decision."

2   *Enlow v. Salem–Keizer Yellow Cab Co*., 389 F.3d 802, 812 (9th Cir. 2004).

3         Under the *McDonnell Douglas* framework, a female plaintiff's prima facie case of gender

4   discrimination must show that she was denied an employee benefit despite performing her job

5   satisfactorily while similarly qualified male employees received the benefit.   See *McDonnell*

6   *Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (describing the test for racial discrimination

7   claims).   If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to

8   "articulate some legitimate, nondiscriminatory reason" for the differential treatment.   *Id*.   Once a

9   defendant makes such a showing, the burden shifts back to the plaintiff to offer evidence that the

10  articulated reason is pretextual.   *Id*. at 804.   "Especially" relevant evidence of pretext can include

11  evidence that the employer did not uniformly apply the stated criterion across male and female

12  employees; facts "as to the petitioner's treatment of respondent during his prior term of employment;

13  petitioner's reaction, if any, to respondent's legitimate civil rights activities; and petitioner's general

14  policy and practice with respect to [female] employment."   *Id*.

15

16         As in the Equal Pay Act claims, BART submits that Basting was treated differently from the

17  male Directors of Marketing and Government Relations was because she, unlike the other Directors,

18  had not been in her classification for at least two years as of June 30, 2019.   Given this legitimate

19  and nondiscriminatory reason for the pay difference, Basting counters that "[a]lthough BART

20  negotiated with some employees, BART did not negotiate with me to increase my salary to the

21  midpoint even after multiple attempts to negotiate BART's decision to not place me at the midpoint

22  equal to the two male Directors."   Dkt. No. 39 ¶ 7.   But to establish that BART did not uniformly

23  apply its policy, Basting needs to point to evidence that *non-represented male employees who*

24  *occupied their roles for less than two years* were given a salary increase to the midpoint.   Conclusory

25  allegations that "BART negotiated with some employees" does not provide the required evidentiary

26  basis to infer that males received exemption from the policy.   Basting also fails to offer evidence

27

28

8

from which a fact finder could infer discriminatory intent.

## CONCLUSION

For the reasons articulated above, BART's Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED**.

Dated: December 6, 2021

SUSAN ILLSTON
United States District Judge